UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ROBERT DANIEL YORK<br><br>     Plaintiff,<br> vs.<br><br>PACES CONTRACTING SERVICES, LLC,<br>MARK MCCAMMON<br>MICHAEL COLSTON,<br>SCOTT JERNIGAN, and<br>KIM BRADY<br><br>     Defendants. | Case No.: _____ |

## COMPLAINT

Plaintiff Robert Daniel York ("York") for his Complaint against the Defendants Paces Contracting Services, LLC, ("Paces"), Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady (collectively "Defendants"), hereby allege as follows:

### INTRODUCTION

1.

This action seeks to terminate an ongoing fraudulent scheme committed against York by Defendants, to recover monies that the Defendants have stolen from York, based on fraudulent insurance claims seeking reimbursement for parts and services allegedly provided to York ("Insured") who was eligible for coverage of

1

such parts and services under an insurance policy issued by Auto-Owners Insurance Company ("Auto-Owners").

2.

In addition to money damages, York seeks a declaration that he is not legally obligated to pay reimbursement of more than $38,549.57 in outstanding claims for parts and services that have been submitted or caused to be submitted by the Defendants, because the claims were fraudulent in that they involved charges for fraudulent and illusory goods and services that were never performed and/or provided in the first instance.

3.

This action also seeks to withdraw a lien fraudulently obtained by Defendants on York's property based on the fraudulent insurance claims.

4.

As more fully described in this Complaint, the Defendants engineered a scheme to create the appearance that Paces performed legitimate services and provided legitimate goods to Insured in order to submit invoices to Auto-Owners for payment under the Insureds' insurance policy. In reality, Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady used Paces as a vehicle through which they could submit fraudulent billing for goods and services which were never performed and/or provided in the first instance and file liens when Insured and Insurers do not pay or otherwise comply.

5.

Paces is a Georgia limited liability company that was used by Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady as a vehicle to submit the fraudulent billing to Auto-Owners and other insurers seeking payment for product and services and to fraudulently obtain a lien of York's and other's property.

6.

Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady are employees or associates of Paces, and the persons that orchestrated and implemented the fraudulent scheme described in this Complaint.

7.

As discussed below, the Defendants at all relevant times have known that the charges for the goods and services that they submitted, or caused to be submitted, to Auto-Owners were fraudulent in that they involved charges for illusory goods and services that were never performed and/or provided in the first instance.

8.

As such, the Defendants do not now have – and never had – any right to be compensated for such product and services that they billed to Auto-Owners.

9.

Exhibit 1 includes fraudulent charges that the Defendants submitted, or caused to be submitted, to Paces and York by means of mail and/or wire transmission in interstate commerce. More specifically, items 3-7, 23, 24, 25, 27, 30, 36, 39, 42, 43,

44, 49, 50, 52, 53, 58, 59, 62-69, 70-84, 86-88, 89-91, 95, 96, 99, 103, 108, 109-114, 116-121, 122-123, 127, 130-134, 136, 138, 139, 140, 141, 142, 143, 144-149, 154, 155-168, 170-172, 175, 176, 178, 180, 181, 182, 183, 185, 189, 194, 195, 196, 199, 204, 205, 210, 211, 212, 216, 217, and 218, for example, are fraudulent.

10.

The Defendants' fraudulent scheme began as early January 2019 and has continued uninterrupted through the present day as Defendants' as by means of mail and/or wire transmission in interstate commerce as Defendants has sent the invoice (Exhibit 1) demanding payment and then employing an attorney to demand payment knowing the invoices including fraudulent charges.

11.

As a result of the Defendants' scheme, York has incurred damages.

**PARTIES, JURISDICTION, AND VENUE**

12.

Plaintiff Robert Daniel York is a resident of Georgia.

13.

Paces is a Georgia limited liability company with their principal places of business and registered agent office located at 110 Andrew Drive, Stockbridge, GA, 30281.

14.

Paces was and continues to be used by Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady as a vehicle to submit to Auto-Owners and other insurers fraudulent claims for product and services.

15.

Each of Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady resides in and is a citizen of Georgia. Each of Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady is employed by or associated with Paces, which they used as a vehicle to submit fraudulent claims for goods and services to Auto-Owners.

16.

Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over the claims brought under 18 U.S.C. §1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act)) because they arise under the laws of the United States. In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. §1367.  State claims asserted herein are properly joined in the above-captioned matter because they arise out of the same controversy and same set of operative facts.

17.

Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred within this District and the Defendants are subject to the Court's personal jurisdiction.

**FACTUAL BACKGROUND**

18.

Auto-Owners is an insurance company licensed and authorized to do business in Georgia. Auto-Owners underwrites homeowners' insurance in Georgia.

19.

An Insured can assign his or her right to covered benefits to his/her preferred provider in exchange for the provider's performance of the repair or replacement services.

20.

Pursuant to an assignment of benefits given by the Insured to the provider, the provider can perform the work and submit its invoice for the repairs or replacements directly to Auto-Owners for payment. The submission is made using mail or wires to Auto-Owners.

21.

Georgia law provides that it is an unlawful practice for a person to knowingly submit a false claim to an insurer for home goods and services if goods and/or services were not provided.

22.

In Georgia, the submission of a claim seeking insurance reimbursement that is based in part on a fraudulent misrepresentation renders the entire claim fraudulent and not reimbursable.

23.

On or about December 14, 2018, York's home was damaged in a fire covered by Auto-Owners.

24.

York was referred to Paces by Auto-Owners and shortly after the fire, York met with Paces at his home so that Paces could prepare an estimate for goods and services to repair York's home.

25.

Beginning in January 2019, the Defendants implemented a fraudulent scheme to bill Auto-Owners and York for goods and services that they never provided for York's home.

26.

Defendants submitted by means of mail and/or wire transmission in interstate commerce an estimate (see Exhibit 1) to Auto-Owners and York to repair York's home. The estimate included a numbered list of good and service needed to repair York's home. Based on the estimate, Auto-Owner issued a first payment, which was provided to Paces.

27.

After completion of some of the work listed on the estimate, Defendants submitted by means of mail and/or wire transmission in interstate commerce a final invoice to Auto-Owners for goods and services that Defendant's fraudulently claimed were provided to repair York's home. On information and belief, the final estimate was essentially a carbon copy of Exhibit. 1. Based on this final invoice, Auto-Owners issued a second payment to York and Paces.

28.

However, a large number of the goods and services listed on the final invoice were false to create the appearance that the Defendants were entitled to the reimbursement sought in the invoice submitted to Auto-Owners.

29.

The final invoice that the Defendants submitted to Auto-Owners was false and misleading in that the invoice falsely represented that goods and services were legitimately performed and/or provided, when in fact they were not. More specifically, referring to Exhibit 1, items 1 3-7, 23, 24, 25, 27, 30, 36, 39, 42, 43, 44, 49, 50, 52, 53, 58, 59, 62-69, 70-84, 86-88, 89-91, 95, 96, 99, 103, 108, 109-114, 116-121, 122-123, 127, 130-134, 136, 138, 139, 140, 141, 142, 143, 144-149, 154, 155-168, 170-172, 175, 176, 178, 180, 181, 182, 183, 185, 189, 194, 195, 196, 199, 204, 205, 210, 211, 212, 216, 217, and 218, for example, are goods and services that

were not legitimately performed and/or provided. In fact, York provided most of those goods and services that were not provided by Defendants.

30.

Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraudulent conduct, York overpaid Paces from the second payment issued by Auto-Owners, however York withheld a portion of the second payment based on goods and service that were not performed to reimburse York for his own services. Now, Paces contends that York owes to Pace the withheld amount.

31.

Defendants caused a lien to be issued against York's home based on the fraudulent claim that it was owed more money to extort or pressure York to pay the fraudulent claims. Defendants knew that the lien was untimely (i.e., filed too late) and that the underlying claim was fraudulent. Filing the lien under these circumstances is unlawful under state law.

### COUNT ONE
### AGAINST MICHAEL COLSTON, SCOTT JERNIGAN, MARK MCCAMMON, AND KIM BRADY
### (VIOLATION OF RICO, 18 U.S.C. § 1962(C))

32.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 1 through 31 above.

33.

Paces is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 961(4), that engages in activities that affected interstate commerce.

34.

Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady have knowingly conducted and/or participated, directly or indirectly, in the conduct of Pace's affairs through a pattern of racketeering activity consisting of repeated mail fraud pursuant to 18 U.S.C.A. § 1341 and wire fraud pursuant to 18 U.S.C.A. § 1343, based upon the use of mail and the wires in interstate commerce to submit or cause to be submitted fraudulent claims for good and services seeking insurance payments under Auto-Owners insurance policies that Paces was never entitled to receive because the services were never performed in the first instance and the goods were never provided in the first instance.  The incidents occurred at least on or about Nov. 25, 2019, December 4, 2019, January 21, 2020 and March 16, 2019.  Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady also caused a fraudulent lien based on the fraudulent claims to issue on against the house in question.

35.

The fraudulent invoice(s) repeated submitted to York and/or Auto-Owners that comprise, in part, the pattern of racketeering activity is set forth in Exhibit 1.

36.

Pace's business is racketeering activity, inasmuch as the enterprise exists solely for the purpose of submitting fraudulent charges to Georgia insurers and filing liens against properties to pressure Insured for the payment of the fraudulent changes. The predicate acts of mail fraud and wire fraud are the regular way in which Defendants Michael Colston, Scott Jernigan, Mark McCammon, and Kim Brady operated Paces, insofar as Paces was never eligible to bill Auto-Owners or other home insurers or Insured (or non-Insured) for all the good and services, and the acts of mail and wire fraud therefore are essential in order for Pace to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of wire fraud implies a threat of continued criminal activity, as does the fact that attempts to collect on the fraudulent billing submitted through Paces continue to the present day.

37.

Paces is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Auto-Owners and other insurers or Insured (or non-Insured) and file fraudulent liens based on the fraudulent claims/billing. These inherently unlawful acts are taken by Paces in pursuit of inherently unlawful goals – namely, the theft of money from Auto-Owners

and other insurers or Insured (or non-Insured) through fraudulent billing of goods and services and liens.

38.

York has been injured in its business and property by reason of the above-described conduct in that it has overpaid to Paces pursuant to the fraudulent claims submitted through Paces. Furthermore, York has a lien against his house which is causing him damages.

39.

By reason of its injury, York is also entitled to recover threefold the actual damages it actually sustained, reasonable attorneys' fees, and court costs pursuant

### COUNT TWO
### PACES
### (DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 AND 2202)

40.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 1 through 39 above.

41.

There is an actual case in controversy between York and Paces fraudulent claims for the purported goods and services that has been submitted to Auto-Owners and/or York.

42.

Paces has no right to receive payment for any pending claims submitted to Auto-Owners and/or York because the claims misrepresented that Paces provided the underlying goods/services, when in fact they did not.

43.

Paces has no right to receive payment for any pending bills submitted to Auto-Owners and/or York because the bills misrepresented the specific goods and services that Paces purported to provide the Insureds.

44.

Accordingly, York requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Paces has no right to receive payment for any pending claims submitted to Auto-Owners and/or York.

**COUNT THREE**
**STATE LAW – INSURANCE FRAUD**

45.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 1 through 39 above.

46.

In furtherance of the fraudulent claims, the Defendants submitted fraudulent invoices to obtain reimbursement from homeowner insurance policies.

47.

When the claims for reimbursement were submitted to Auto-Owners and/or York, the Defendants knew that the submission of invoices contained false and misleading information concerning facts material to Auto-Owner's and York's determination to pay claims, including misrepresentations that Paces performed services, when such service were never performed in the first instance and Paces provided goods to the Insureds, when the goods were never provided in the first instance.

48.

These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Georgia law.

49.

This pattern of racketeering activity resulted in York overpaying Paces for the reimbursement of goods and services that it otherwise would not have paid.

50.

Defendants' pattern of racketeering activity has caused York to sustain damages.

51.

By reason of Defendants' conduct, York is also entitled to recover threefold the actual damages it actually sustained, reasonable attorneys' fees, and court costs.

## COUNT FOUR
## (COMMON LAW FRAUD)

52.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 1 through 39 above.

53.

Defendants intentionally and knowingly made false and fraudulent statements of material fact to Auto-Owner and/or York and concealed material facts in the course of their submission of fraudulent claims to Auto-Owner and/or York for reimbursement.

54.

The false and fraudulent statements of material fact and acts of fraudulent concealment include the misrepresentations that: (i) Paces performed services to the Insured/York, when such services were never performed in the first instance; (ii) Paces provided goods to the Insured/York, when the goods were never provided in the first instance.

55.

Defendants intentionally made the above-described false and fraudulent statements and concealed material facts from Auto-Owner and York in a calculated effort to mislead Auto-Owner and the York and induce Auto-Owner and/or York to pay for reimbursement claims that it would not otherwise have provided.

56.

Auto-Owner and York justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid monies in the reimbursement of claims made by Paces.

57.

The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Auto-Owners and York to recover punitive damages.

58.

Accordingly, by virtue of the foregoing, Insured is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## COUNT FIVE
### (UNJUST ENRICHMENT)

59.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 1 through 39 above.

60.

As set forth above, Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of York.

61.

When York paid the invoices submitted by the Defendants for reimbursement, it reasonably believed that the goods and services were provided to the Insureds (based upon the invoices minus the goods and services York knew where not provided).

62.

Absent the misrepresentations by Defendants, York would not have issued the payment for some of the items listed in Exhibit 1.

63.

Therefore, York's payment of the claims submitted by the Defendants through Paces resulted in the Defendants being unjustly enriched, as the Defendants received payment for claims they submitted to Auto-Owners, which should not have been paid since the goods and services were never provided to the Insureds.

64.

Defendants' enrichment was at York's expense, as York overpaid the Defendants.

65.

By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

(a) trial by jury on all issues so triable as of right;

(b) judgment against Defendants awarding fair and reasonable damages including general damages, special damages, and punitive damages, as allowed by law;

(c) declaratory and injunctive relief;

(d) costs of this action, including interest and reasonable attorneys fees; and

(e) such other and further relief as this Court deems just and fair.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues so triable as of right and plead in this case.

Respectfully submitted this 9th day of June, 2020.

/s/ Charlena Thorpe
Charlena L. Thorpe
Georgia Bar No. 760954
charlena@incorporatinginnovation.com
6340 Sugarloaf Parkway Suite 200
Duluth, GA 30097
Tel: 770-325-2741
Fax: 770-325-2741